IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

RILEY BOYLE                                      Civ. No. 6:20-cv-00705-AA

                 Plaintiff,          **OPINION & ORDER**

     v.

LEGACY HEALTH PLAN
NO. 504; LEGACY HEALTH;
PACIFICSOURCE HEALTH
PLANS,

               Defendants.

_____

AIKEN, District Judge.

       This case, alleging claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., comes before the Court on cross-motions filed by Defendant PacificSource Health Plans ("PacificSource"), ECF No. 38; by Defendants Legacy Heath and Legacy Health Plan No. 504 (collectively, "Legacy"), ECF No. 40; and by Plaintiff Riley Boyle, ECF No. 41; and on Plaintiff's Motion to Strike the Declaration of Tammi Mizer, ECF No. 48. Plaintiff Riley Boyle seeks reimbursement for amounts she paid for out-of-network care. For the reasons set forth below, Defendants' Motions are DENIED and Plaintiff's Motions are GRANTED.

## LEGAL STANDARD

Defendants present their motions as motions for summary judgment under Federal Rule of Civil Procedure 56, while Plaintiff presents her motion as one for judgment under Rule 52. With respect to Rule 56, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However,

> Traditional summary judgment principles have limited application in ERISA cases governed by the abuse of discretion standard. Where, as here, the abuse of discretion standard applies in an ERISA benefits denial case, a motion for summary judgment is, in most respects, merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.

*Stephan v. Unam Life Ins. Co.*, 697 F.3d 917, 929-30 (9th Cir. 2012) (internal quotation marks and citation omitted).

Under Rule 52, the court conducts what is essentially a bench trial on the record. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95 (9th Cir. 1999). Here, the parties agree that the appropriate standard of review is abuse of discretion, discussed in greater detail below. "The Ninth Circuit has often held that in an ERISA benefits case, where the court's review is for an abuse of discretion, summary judgment is a proper 'conduit to bring the legal question before the district court.'" *Rabbat v. Standard Ins. Co.*, 894 F. Supp.2d 1311, 1314 (D. Or. 2012) (quoting

*Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999), *overruled on other grounds by Abatie v. Alta Health Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006) (en banc)).

## EVIDENTIARY ISSUES

### I.    Motion to Strike

Plaintiff moves to strike the Declaration of Tammi Mizer, ECF No. 39, pursuant to Federal Rule of Civil Procedure 12(f).  ECF No. 48.  Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The decision whether to grant or deny a Rule 12(f) motion is within the court's discretion. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 963 (9th Cir. 2018).

Plaintiff seeks to strike the ¶¶ 1-7 of the Declaration on the basis that they contain undisputed statements that are available elsewhere in the record and to strike ¶ 8 of the Declaration on the basis that Ms. Mizer's statement that the Parry Center for Children was an appropriate in-network option for Plaintiff was not made in the course of the administrative process and is only now offered in support of Defendants' litigation position.  Pl. Resp. at 34-35.  ECF No. 49.

"[F]or the most part, judicial review of benefits determinations is limited to the administrative record—that is, the record upon which the administrator relied in making its benefits decision."  *Stephan*, 697 F.3d at 930.  Here, Ms. Mizer's statement concerning the Parry Center was not before the administrator when it made its decision and so is beyond the administrative record.  The Court declines to consider the Declaration and the motion to strike is GRANTED.

## II.      Consideration of the IRO Report

Defendants also urge the Court to consider the findings of the Independent Review Organization, which upheld the denial of Plaintiff's claim. As with the Mizer Declaration, this issue concerns the IRO's finding that the Parry Center was an appropriate placement for Plaintiff. And, as with the Mizer Declaration, the IRO's review was not part of the administrative record before the administrator when it made its claim decision. The Court declines to consider the IRO decision as part of the administrative record and the IRO's findings will not be considered. *Stephen*, 697 F.3d at 930; *see also Yox v. Providence Health Plan*, No. 3:12-CV-01348-HZ, 2013 WL 6887530, at *5 (D. Or. Dec. 31, 2013) ("Because the IRO decision was not part of the administrative record Defendant relied upon in making its decision, I will not consider the IRO decision as part of the administrative record in determining whether Defendant abused its discretion in denying Plaintiff's claim.").

## BACKGROUND

## I.      The Parties

Defendant Legacy Health Plan No. 504 (the "Plan") is an employee welfare benefits plan under ERISA, 29 U.S.C. § 1002. Legacy_000127. The Plan includes a component plan, the Medical Plan, which provides healthcare coverage for Plan participants. The Plan is fully self-funded.

Defendant Legacy Health ("Legacy") is a healthcare system located in Multnomah County, Oregon. Legacy is the owner and sponsor of the Plan and a fiduciary of the Plan under ERISA.

Defendant PacificSource Health Plans ("PacificSource") is the third-party administrator responsible for administering claims under the Plan. Legacy_00086-87. PacificSource provides administrative services for Plan participants including enrollment assistance, processing of medical claims, customer service, and recordkeeping. Legacy delegates responsibility for preliminary claim determination authority to PacificSource, which involves review of medical claims and application of Plan terms. PacificSource does not pay out benefits under the Plan. Benefits are paid exclusively by Legacy.

Plaintiff Riley Boyle is the daughter of Josie Boyle ("Mrs. Boyle"). Mrs. Boyle is an employee of Legacy and a participant in the Plan. At all material times, Plaintiff was a dependent of Mrs. Boyle and a participant in the Plan. At all material times, both Plaintiff and Mrs. Boyle resided in the State of Oregon. During much of the relevant time, Plaintiff was a minor and so Mrs. Boyle interacted with PacificSource on Plaintiff's behalf concerning coverage under the Plan.

## II.    The Plan

The Plan provides that "[t]he Benefits Plan and all Component Plans . . . shall be administered by an Administrative Committee of one or more person appointed by the chief executive officer of Legacy Heath, who may delegate that function." Legacy_000165. "The Committee shall interpret the Benefits Plan, decide any questions about the rights of participants and their beneficiaries and in general administer the Plan." *Id.* "Any decision by the Committee shall be final and bind all

parties," and "[t]he Committee shall have absolute discretion to carry out its responsibilities under this section." *Id.*

"Claims and appeals of denied claims for benefits under uninsured Component Plans shall be governed by procedures established by the Committee and subject to the Committee's discretion within the requirements of applicable law and regulations." Legacy_000166. "Claims and appeals of denied claims for benefits under fully insured Component Plans shall be administered in accordance with the terms of the applicable insurance contract." *Id.*

The "Exclusive Provider Organization" ("EPO") for the Plan is referred to as "Legacy+ Network" and is selected by Legacy and "maintained by PacificSource." Legacy_000048. "Legacy+ Network participating physicians and providers are physicians, hospitals, health care professionals and facilities that contract to provide health care services to members." *Id.* Physicians, health care professionals, hospitals, and facilities that are not part of the Legacy+ Network are "out-of-network" providers. *Id.*

The Medical Plan covers eligible services from Legacy+ Network facilities and providers with limited coverage outside of the Legacy+ Network. Legacy_000029. Out-of-network coverage is limited to (1) emergency and urgent care services for non-routine care; (2) "[c]overed services not available within the Legacy+ Network when pre-approved by PacificSource;" and (3) covered serviced received from licensed chiropractor or acupuncturist. *Id.*

"PacificSource reviews requests for out-of-network exceptions," and if a participant or their provider believes a covered service is not available within the Legacy+ Network, the Plan directs them to contact PacificSource at a specified telephone number. Legacy_000030. Medical services that are not "medically necessary" are not covered. *Id.* However:

> If PacificSource determined a requested covered service is medically necessary and not available from a Legacy+ Network provider or facility, the service is paid at a minimum of 80 percent and subject to the out-of-pocket maximum.

> If PacificSource does not approve an out-of-network exception, the service is not covered and your costs are not included in the out-of-pocket maximum.

Legacy_000030.

The Plan provides 80% coverage for inpatient facility services for mental health treatment for Legacy+ Network providers and 0% for out-of-network providers. Legacy_000034.

The Plan also provides for pre-service and post-service claim procedures as follows:

> If a claim is for a non-urgent benefit requiring advance approval or pre-certification, the claim administrator notifies the claimant of its decision, adverse or not, within a reasonable time appropriate to the medical circumstances, but not later than 15 days after the claim administrator received the claim, unless it contains insufficient information to base a decision or an extension is required for other reasons beyond the plan's control. In that case, the claim administrator may extend the time once for another period of up to 15 days.

> *        *        *

> The claim administrator provides the claimant with written or electronic notice of any adverse determination, including: specific reason or reasons for the determination; reference to specific plan provisions on

which the determination is based; description of any additional material or information necessary for the claimant to perfect the claim and explanation of why it is necessary; description of the review procedure and applicable time limits; statement of the claimant's right to bring a legal action under ERISA following any adverse determination on review.

Legacy_000089.

### III.    Plaintiff's Treatment History

Prior to 2016, Plaintiff excelled in school and maintained a good group of friends and close, positive relations with her parents. PS_000005.  Beginning in July 2016, Plaintiff began experimenting with drugs and alcohol, her relationship with her parents became strained, and she began to exhibit symptoms of depression and anxiety.  *Id.*  Plaintiff began to engage in self-harm, stopped taking her ADHD medication, and began to display disordered eating.  *Id.*

When Mrs. Boyle learned that Plaintiff was self-harming and experiencing suicidal ideation, she had Plaintiff hospitalized in October 2016.  PS_000006. Plaintiff received treatment and counseling in the following months but with limited success.  *Id.*  Additional hospitalizations followed in the winter of 2016-2017, but Plaintiff continued to self-harm and use drugs.  *Id.*

Mrs. Boyle took Plaintiff for in-patient treatment at a facility called New Vision Wilderness Therapy, where she remained for ten weeks.  PS_000007.  Plaintiff made a great deal of progress during her treatment at New Vision, but her therapist and psychologist concluded that Plaintiff was not ready to come home at the conclusion of her time in New Vision.  *Id.*  A placement specialist recommended to Mrs. Boyle that Plaintiff be sent to a residential treatment facility in Utah.  *Id.*  Mrs. Boyle decided

to send Plaintiff to a facility in Utah called New Haven Residential Treatment and Boarding School. *Id.* Plaintiff remained at New Haven from August 18, 2017, to June 8, 2018. PS_000144. Plaintiff successfully completed treatment at New Haven in June 2018 and graduated from high school shortly afterwards. *Id.*; PS_000007.

New Haven was not part of the Legacy+ Network and so was an out-of-network provider under the Plan.

## IV.    Mrs. Boyle's Interactions with PacificSource

In February 2017, Mrs. Boyle called PacificSource to ask about residential treatment for Plaintiff. PS_002997. During the call, Mrs. Boyle and the PacificSource representative searched for in-network providers and found that there were fourteen within ten miles of Plaintiff's address. *Id.* When Mrs. Boyle asked what could be done if none of the in-network options were appropriate, the PacificSource representative explained that the Plan had coverage for in-network, but no coverage for out-of-network but that Mrs. Boyle could request an out-of-network exception and have Plaintiff's provider submit a request for authorization. *Id.* Mrs. Boyle told the representative that she would "start working on that on my end." *Id.*

Mrs. Boyle called PacificSource again in July 2017 to ask about benefits in connection with Plaintiff's treatment at New Vision. PS_002998. The PacificSource representative, Lindsay, explained that New Vision was a non-participating ineligible provider and that, because there was no authorization on file for Plaintiff's treatment at New Vision, any claims related to New Vision would be denied. *Id.*

Lindsay told Mrs. Boyle that, going forward, she could request an out-of-network exception and explained the process for appealing the denial of coverage for Plaintiff's time at New Vision. *Id.* During the July call, Mrs. Boyle also asked about the possibility of coverage for "therapeutic boarding school" and how to get preauthorization for such treatment. *Id.* At the time, Mrs. Boyle had not yet decided to sent Plaintiff to New Haven and so was not able to give Lindsay the name of the facility. *Id.* Lindsay conferred with another PacificSource representative and told Plaintiff that, while they were not sure if a therapeutic boarding school would be covered under medical insurance, the provider could request an out-of-network exception.[1] *Id.* During the call, Lindsay told Mrs. Boyle that the out-of-network exception should be requested before Plaintiff arrived at the facility, although she could attempt to request authorization while Plaintiff was at the facility. *Id.* Lindsay also explained to Mrs. Boyle that PacificSource did not have a dedicated form for an out-of-network exception, but that providers should request prior authorization with a note that they were seeking an out-of-network exception. *Id.* Lindsay also told Mrs. Boyle that when the provider called, PacificSource representatives would explain how to complete the form. *Id.*

On August 16, 2017, a representative of New Haven called PacificSource to ask about coverage for Plaintiff's treatment at New Haven. PS_002999. The PacificSource representative asked if New Haven was in the Legacy+ Network and

---

[1] There appears to have been some uncertainty during this call about the nature of a "therapeutic boarding school," and whether it would be covered under the Plan at all. PS_002998. It is not clear whether the PacificSource representatives understood the nature of the proposal to be one for residential mental health treatment, as opposed to education.

the New Haven representative told the PacificSource representative that New Haven was out-of-network. *Id.* The New Haven representative told the PacificSource representative that the nature of the service provided was residential mental health treatment. *Id.* The PacificSource representative told the New Haven representative that there was no coverage for out-of-network services. *Id.* Neither the New Haven or the PacificSource representative raised the possibility of requesting an out-of-network exception. *Id.* As noted, Plaintiff began treatment at New Haven on August 18, 2017. PS_000144.

On August 28, 2017, Mrs. Boyle called PacificSource to ask about arranging for routine medical care for Plaintiff during the time Plaintiff would be at New Haven. PS_003000. Mrs. Boyle explained that she was not calling about getting coverage for Plaintiff's treatment at New Haven, but that Plaintiff would still need to see a primary care provider and to receive prescriptions while she was out-of-state. *Id.* Mrs. Boyle expressed that her understanding was that a request for an out-of-network exception for New Haven had already been made and rejected. *Id.* The PacificSource representative explained that for out-of-network care, Mrs. Boyle would need to submit a request for pre-authorization. *Id.*

On November 15, 2017, Mrs. Boyle called PacificSource to ask if New Haven had submitted a claim for Plaintiff's treatment. PS_003001. The PacificSource representative told Mrs. Boyle that no claim had been made and asked if New Haven had obtained prior authorization. *Id.* Mrs. Boyle explained that Plaintiff had secondary coverage through Mrs. Boyle's ex-husband's insurance but that the

secondary insurance would not provide coverage until PacificSource had denied the claim. *Id.* Mrs. Boyle told the PacificSource representative that she did not expect that her insurance would provide coverage for Plaintiff's treatment because Mrs. Boyle believed the request had already been made and denied. *Id.*

In December 2017, Mrs. Boyle called PacificSource and spoke again with Lindsay. PS_003002. During this call, Lindsay and Mrs. Boyle discussed the fact that there had never been a request for an out-of-network exception for New Haven and Lindsay explained that New Haven could attempt to submit a retroactive authorization, supported by information from Plaintiff's counselors and an explanation of the lack of in-network options. *Id.*

On January 19, 2018, a request for an out-of-network exception was submitted for Plaintiff's treatment at New Haven. PS_001857-001864. PacificSource issued a "Preauthorization Determination Notice" in which it denied the out-of-network exception on the basis that "Services rendered by nonparticipating providers and facilities are not a covered benefit of the plan." PS_003109. PacificSource attached a copy of a page from the Plan where it is explained that coverage outside of the Legacy+ Network was only available, in relevant part, for "[c]overed services not available within the Legacy+ Network when pre-approved by PacificSource." PS_003110. PacificSource also included an explanation of Plaintiff's ERISA and appeal rights. PS_003111-003114.

On January 28, 2018, PacificSource provided an Explanation of Benefits ("EOB") that denied coverage for Plaintiff's treatment at New Haven. PS_000022.

The January 28, 2018 EOB gave the following code and reason for the denial: "5BA: Service not covered based on medical review." *Id.* Additional EOBs issued on March 4, 2018, and March 25, 2018, included the code "657: Additional information required. The ordering doctor must contact our Health Services team within 90 days of this notice for authorization." PS_000024-PS_000026. EOBs issued on April 8, 2018, April 22, 2018, and May 13, 2018 included the code "562: This service is not covered when performed by a non-participating provider." PS_000029; PS_000031; PS_000033.

### V.    Plaintiff's Appeals

On July 23, 2018, Mrs. Boyle filed an appeal of the denial of Plaintiff's coverage. PS-000002. In her appeal, Mrs. Boyle requested that the file be reviewed by a provider "board certified in child and adolescent psychiatry and have experience treating adolescents with major depressive disorder, generalized anxiety disorder, attention-deficit hyperactivity disorder (ADHD), post-traumatic stress disorder, substance abuse, emotion dysregulation, and other high risk behaviors in an intermediate residential treatment center setting." PS_000004. Mrs. Boyle submitted a lengthy statement explaining the medical necessity of the treatment, supported by statements from Plaintiff's treatment providers. PS_000005-PS_000008. Mrs. Boyle also submitted excerpts from Plaintiff's treatment notes supporting the need for the requested treatment. PS_000009-PS_000017.

Mrs. Boyle asserted that, prior to sending Plaintiff to New Haven, "[e]very effort was made to find a treatment provider that could meet [Plaintiff]'s needs within

my plan's network," but that the search was "fruitless, so treatment options outside of the network had to be considered." PS_000005. Mrs. Boyle stated that New Haven was "the perfect fit in regards to intensity of service as well as treatment methods" and that "these services were medically necessary" and "New Haven was the best and only treatment option available for [Plaintiff]." *Id.*

On August 8, 2018, PacificSource reviewed Plaintiff's appeal and the denial was upheld. PS_001931-001933. The Medical Grievance Committee ("MGC"), which included a physician consultant board-certified in family medicine, determined that "residential MH [mental health] services to treat the member's diagnoses are available within the Legacy+ network such as Cedar Hills." PS_001932.

On August 23, 2018, PacificSource issued its decision in a letter sent to Plaintiff. PS_001934. In the letter, PacificSource informed Plaintiff:

> The MGC reviewed the available medical records, the correspondence submitted and the group benefit provisions. The MGC noted that an out-of-network exception was requested for mental health (MH) residential (RES) treatment at New Haven Residential Treatment Center, Spanish Fork, UT for admission 08/18/2017. The MGC determined that Cedar Hills Hospital, Portland OR is a qualified in-network facility for Legacy Employee Health Plan and can provide treatment for this member's diagnosis. The MGC let stand the original determination of non-approval of an out-of-network exception. This determination was based on "*Legacy Employee Health Plan's benefit book.*["]

PS_001934 (emphasis in original).

On December 6, 2018, Mrs. Boyle initiated a second-level appeal on behalf of Plaintiff. PS_001936-001938. In the second appeal, Plaintiff asserted that "[t]his claim should not have been denied because Cedar Hills Hospital, Portland Oregon

does not provide services for patients 18 years or under," and "[t]here is no inpatient residential treatment for in the Portland area that addresses trauma, addiction, and depression for people under the age of 18." PS_001936. The second appeal was supported by a letter from Plaintiff's treatment provider explaining that, in addition to not providing treatment to minors, Cedar Hills Hospital did not provide the same type and intensity of care offered at New Haven. PS_001938.

On January 28, 2019, PacificSource issued a letter denying Plaintiff's second appeal, stating:

> This case was presented to a Physician Consultant for discussion and determination January 23, 2019. The Physician Consultant is Board Certified in Internal Medicine & Nephrology. The Physician Consultant reviewed the available medical records, the correspondence submitted, the group contract provisions, and the applicable procedures and coverage criteria.
>
> The Physician Consultant noted that an out-of-network exception was requested for treatment of mental health issues by New Haven Residential Treatment Center. The Physician Consultant determined that there are in-network qualified residential treatment centers who can provide treatment for this member's diagnosis. The Physician Consultant let stand the original determination of non-approval of an out-of-network exception.
>
> This determination was based on "Legacy Employee Health Plan's benefit book."

PS_001954.

## DISCUSSION

### I.    PacificSource Health Plans is a Proper Defendant

PacificSource asserts that it is not a proper defendant in this case. Although ERISA permits a plan participant or beneficiary to bring a civil action to recover

benefits due under the terms of their plan, 29 U.S.C. § 1132(a)(1), "[t]here are no limits stated anywhere in § 1132(a) about who can be sued." *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1205 (9th Cir. 2011). The Ninth Circuit has held that liability is not limited to plans and plan administrators, but that the plan administrator may not necessarily be the correct defendant because "the plan administrator can be an entity that has no authority to resolve benefit claim or any responsibility to pay them." *Id.* at 1207. In *Cyr*, the insurer of the plan, Reliance Standard Life, was named as a defendant despite being neither the plan nor the plan administrator, but Reliance "denied Cyr's request for increased benefits even though, as the plan insurer, it was responsible for paying legitimate benefits claims," and so was, therefore, "a logical defendant for an action by Cyr to recover benefits due to her under the terms of the plan and to enforce her rights under the terms of the plan, which is precisely the civil action authorized by § 1132(a)(1)(B)."

Following *Cyr*, the "proper defendants under § 1132(a)(1)(B) for improper denial of benefits at least include ERISA plans, formally designated plan administrators, insurers or other entities responsible for payment of benefits, and de facto plan administrators that improperly deny or cause improper denial of benefits." *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz.*, 770 F.3d 1282, 1297 (9th Cir. 2014). "Suits under § 1132(a)(1)(B) to recover benefits may be brought against the plan as an entity *and against fiduciaries of the plan*," and a fiduciary "is any entity that exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting

management or disposition of its assets or has any discretionary authority or discretionary responsibility in the administration of such plan." *Id.* at 1297-98 (internal quotation marks and citations omitted, alterations normalized, emphasis in original).

"In contrast, a person who performs purely ministerial functions for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan." *Smith v. Univ. of S. Cal.*, Case No. LA CV18-06111 JAK (AFMx), 2019 WL 988681, at *2 (C.D. Cal. Jan. 22, 2019) (internal quotation marks and citation omitted).  "However, 'an insurer will be found to be an ERISA fiduciary if it has the authority to grant, deny, or review denied claims.'"  *Id.* (quoting *Kyle Rys., Inc. v. Pac. Admin. Servs., Inc.*, 990 F.2d 513, 518 (9th Cir. 1993)).

Here, PacificSource asserts that it is not a fiduciary or de facto fiduciary under the Plan because Legacy reserves to itself the responsibility of interpreting the Plan, establishing procedures for administering the Plan, and paying claims under the Plan.  PacificSource maintains that it performs "merely ministerial" functions under the Plan and so is not a proper defendant in this action.  However, the record, as set forth above, indicates that PacificSource made the initial claim decision and was involved with both levels of Plaintiff's appeals.  The Court also notes that, in its letters denying Plaintiff's appeals, PacificSource identifies itself as having "a legal and fiduciary responsibility to administer plan provisions and limitations

consistently for all members and policyholders." PS_001935, PS_001955. The Court concludes that PacificSource's authority and control over the management of the Plan went beyond the "merely ministerial" and PacificSource may be fairly categorized as a *de facto* administrator. PacificSource is therefore a proper defendant in this action and the Court declines to dismiss the claims against PacificSource.

## II.    Standard of Review

The default standard of review applicable to a plan administrator's decision to deny benefits is de novo. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, if the plan unambiguously gives the plan administrator discretion to determine a plan participant's eligibility for benefits, then the standard of review shifts to abuse of discretion. *Abatie*, 458 F.3d at 963.

Here, the parties agree that "abuse of discretion" is the proper standard. Pl. Mot. 24 ("Because the Plan grants the Committee the authority to make benefit determinations, the applicable standard of review is 'abuse of discretion.'"); Legacy Mot. 14 ("When, as here, a plan confers discretion on the plan administrator to determine eligibility for benefits or construe the terms of the plan, courts apply the abuse of discretion standard of review."); PacificSource Mot. 18 ("Because the Plan grants discretionary authority to interpret the Plan and make decisions on benefit eligibility, the Court's review here is limited to determining whether the Plan's decision to deny Plaintiff benefits under the Plan was an abuse of the Plan administrator's discretion under ERISA."). The Court will therefore apply the "abuse of discretion" standard in assessing the motions.

In reviewing for an abuse of discretion, an ERISA plan administrator's decision "will not be disturbed if reasonable." *Conkright v. Frommert*, 559 U.S. 506, 521 (2010) (internal quotation marks omitted). This reasonableness standard requires deference to the administrator's benefits decision unless it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts on the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (internal quotation marks and citation omitted). As set forth by the Ninth Circuit, the test for abuse of discretion is "whether we are left with a definite and firm conviction that a mistake as been committed." *Id.* (internal quotation marks and citation omitted). Courts "equate the abuse of discretion standard with the arbitrary and capricious review" and, under this standard, the defendant's interpretation of the plan language "is entitled to a high level of deference." *Tapley v. Locals 302 & 612 of Int'l Union of Operating Eng'rs-Emp'rs Constr. Indus. Ret. Plan*, 728 F.3d 1134, 1139 (9th Cir. 2013) (internal quotation marks and citation omitted).

Plaintiff urges that the Court consider the close relationship between Legacy and PacificSource, including Legacy's ownership of a substantial stake in PacificSource, and Legacy's role in appointing the Committee in applying the "abuse of discretion standard," which Plaintiff asserts creates a structural conflict of interest. When "the insurer acts as both the funding source and administrator[,]" there is a structural conflict of interest the "must be weighed as a factor in determining whether this is an abuse of discretion." *Salomaa*, 624 F.3d 674 (internal quotation marks and citation omitted). However, structural conflicts do not divest the administrator of his

delegated discretion. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115-16 (2008). "Rather, they weigh more or less heavily as factors in the abuse-of-discretion calculus." *Lee v. Kaiser Found. Health Plan Long Term Disability Plan*, 563 Fed. App'x 530, 530-31 (9th Cir. 2014) (citing *Firestone*, 489 U.S. at 115); *see also Abatie*, 458 F.3d at 967 ("We read *Firestone* to require abuse of discretion review whenever an ERISA plan grants discretion to the plan administrator, but a review informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record."). A determination of whether a plan administrator abused its discretion in cases where a structural conflict of interest is implicated turns on the consideration of "numerous case-specific factors, including the administrator's conflict of interest, and reach a decision as to whether discretion has been abused by weighing and balancing those factors together." *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 630 (9th Cir. 2009). However, a defendants' structural conflict of interest "bears little weight . . . absent evidence that it tainted the entire administrative decision-making process." *Seleine v. Fluor Corp. Long-Term Disability Plan*, 409 Fed. App'x 99, 100 (9th Cir. 2010) (internal quotation marks and citation omitted).

Here, the Court will consider the structural conflict of interest in assessing Defendants' exercise of discretion, although the Court finds little evidence that the conflict tainted the administrative process. The conflict of interest will therefore be of limited weight in the Court's analysis.

### III.    Contours of the Out-of-Network Exception Requirement and the Stated Basis for the Denial of Coverage

ERISA requires that "every employee benefit plan shall . . . provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, *setting forth the specific reasons for such denial*, written in a manner calculated to be understood by the participant."   29 U.S.C. § 1133(1) (emphasis added).   The regulations similarly require that a notification of an adverse benefits decision set forth the "the specific reason or reasons for the adverse determination" and "reference to the specific plan provisions on which the determination is based."   29 C.F.R. §§ 2560.503-1(g)(1)(i),(ii).

Here, the parties are broadly in agreement that the stated basis for the denial of coverage is the non-approval of Plaintiff's request for an out-of-network exception. However, as explained below, there are three basic requirements for an out-of-network exception under the Plan and the decision to deny Plaintiff's claim did not rely on a failure of all three requirements.

On page 19 of the Plan's Employee Benefits Guide, under the section entitled "Coverage within the Legacy+ Network," the Plan explains that it covers "eligible services and supplies received from Legacy+ Network facilities and providers." Legacy_000029.   "Coverage outside the Legacy+ Network is limited to: . . . Covered services not available within the Legacy+ Network when pre-approved by PacificSource."   *Id.*   On the following page, under the heading "Out-of-network exception review," the Plan explains:

PacificSource reviews request for out-of-network exceptions. If you or your provider believes a covered service is not available within the Legacy+ Network, contact PacificSource at 844-520-5347. Medical services that are not medically necessary as defined on page 38 are not covered.

If PacificSource determined a requested covered service is medically necessary and not available from a Legacy+ Network provider or facility, the service is paid at a minimum of 80 percent and subject to the out-of-pocket maximum.

If PacificSource does not approve an out-of-network exception, the service is not covered and your costs are not included in the out-of-pocket maximum.

Legacy_000030.

Read together, the plain language of the Plan provides that out-of-network services will be at least partially covered if (1) the service is medically necessary; (2) not available from a Legacy+ Network provider or facility; and (3) pre-approved by PacificSource. This is significant because, while the parties do not dispute that the services provided to Plaintiff were medically necessary, they do dispute whether they were available within the Legacy+ Network and whether pre-approval by PacificSource was required.

Plaintiff maintains that the lack of pre-approval was not a stated basis for the denial of coverage and providers are prohibited from raising new bases for denial for the first time during litigation. *See Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 719 (9th Cir. 2012) ("A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court."); *see also Spindex*, 770 F.3d at 1296 (holding that "an administrator may not hold in reserve a known or reasonably

knowable reason for denying a claim, and give that reason for the first time when the claimant challenges a benefits denial in court.").  The Court agrees.

Plaintiff's request for coverage for her treatment at New Haven was denied on January 19, 2018 on the basis that "Services rendered by nonparticipating providers and facilities are not a covered benefit," followed by a copy of page 19 of the Plan where it is explained that out-of-network coverage was only available when the services were not available within the Legacy+ Network and "when pre-approved by PacificSource."  PS_003109-003110.

Plaintiff appealed and Defendants' decision on appeal "let stand the original determination of non-approval of an out-of-network exception," on the basis that there were providers available within the Legacy+ Network and specifically cited to Cedar Hills Hospital.  PS_001934.

The denial of the second appeal likewise "let stand the original determination of non-approval of an out-of-network exception" and noted that the "Physician Consultant determined that there are in-network qualified residential treatment centers who can provide treatment for this member's diagnosis."  PS_001954.

Although medical necessity, lack of in-network services, and pre-authorization are all component parts of the out-of-network exception, only a single element was cited in the denials of both of Plaintiff's appeals—namely, that there were in-network options available to Plaintiff.  *See* PS_001934 (denying Plaintiff's first appeal because the "MGC determined that Cedar Hills Hospital, Portland, OR is a qualified in-network facility for Legacy Employee Heal Plan and can provide treatment for this

member's diagnosis."); PS_001954 (denying Plaintiff's second appeal because the "Physician Consultant determined that there are in-network qualified residential treatment centers who can provide treatment for this member's diagnosis.").

The need for authorization before receiving out-of-network care was explained to Mrs. Boyle during a call with a PacificSource representative in February 2017 and again in a second call in July 2017, PS_002997; PS_002998. However, in a subsequent call in December 2017, Mrs. Boyle was told that retroactive authorization was also an option. PS_003002. Indeed, PacificSource *did* consider Plaintiff's late-filed request for an out-of-network exception and denied it on the explicit basis that the in-network options were available, without reference to the fact that authorization was not sought until Plaintiff was already receiving treatment.

In addition, the Court notes that a New Haven representative called PacificSource prior to Plaintiff's admission to New Haven to inquire about coverage, only to be told that there was no coverage out-of-network services and the PacificSource representative did not mention the possibility of an out-of-network exception, nor did the PacificSource representative explain the process for applying for an out-of-network exception to the New Haven representative, contrary to the information provided to Mrs. Boyle in her earlier calls. PS_002999.

On this record, the Court concludes that a lack of pre-authorization was not raised as a basis for denial of Plaintiff's claims prior during the administrative process and is being raised for the first time in federal litigation. This is impermissible. *Harlick*, 686 F.3d at 719. The Court will therefore confine its analysis

of Defendants' alleged abuse of discretion to the stated basis for the denial of coverage, namely whether there were appropriate services available in-network.

## IV.    Defendants Failed to Consult a Mental Health Care Provider as Required

Plaintiff asserts that Defendants erred by failing to consult a mental health care professional when considering the appeal of the denial of Plaintiff's claims. The relevant regulation, 29 C.F.R. § 2560.503-1, provides that "[t]he claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination, unless" the claims procedures:

> (iii) Provide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental, investigational, or not medically necessary or appropriate, the appropriate fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment; [and]

> (iv) Provide for the identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination.

29 C.F.R. § 2560.503-1(h)(3)(iii)-(iv).

Here, there is no dispute that Plaintiff's treatment was medically necessary. Defendants assert that the denial was not based on the exercise of medical judgment, but rather that the denial was based on the availability of services within the Legacy+

Network.[2]  The question of whether appropriate services were available is, however, a question that by its nature implicates the exercise of medical judgment.

In Plaintiff's first appeal, Mrs. Boyle stated that "[t]here were no inpatient facilities in-network in Portland that could not only admit her as an adolescent, but also offer trauma, depression, and substance use treatment."  PS_000007.  "The only option was Children's Farm Home in Corvallis, but that program is designed to treat severely disturbed children with schizophrenia and bipolar disorders, not trauma and substance abuse recovery."  *Id.*  On its face, the propriety of the available in-network services was implicated by Plaintiff's first appeal.

In denying Plaintiff's first appeal, Defendants relied on the medical opinion of a doctor certified in family practice, rather than in any relevant mental health specialty.  That doctor, and the MGC, determined that appropriate care could be provided by Cedar Hills Hospital which, the record before the Court shows, does not provide care to minors and so was plainly not an appropriate placement for Plaintiff.

The second appeal, which relied on the medical opinion of a doctor certified in internal medicine and nephrology, fared no better in that it offered only the vague statement that there were available in-network services, but without identifying any such services.

The Court concludes that the failure to consult with a medical provider certified and experienced in the field of mental health before determining that there

---

[2] Defendants also asset that it was based on the lack of pre-authorization.  While the lack of pre-authorization would not implicate medical judgment, it was not raised as a basis for denying Plaintiff's claim or her appeals during the administrative process and, as previously discussed, may not be raised for the first time during federal litigation.

were appropriate services available in-network weighs in favor of finding an abuse of discretion.

## V.    Defendants Abused Their Discretion In Denying Coverage

As previously discussed, the sole stated basis for denying Plaintiff's claim for coverage was that the out-of-network exception was denied because that there were appropriate services available to treat Plaintiff within the Legacy+ Network. When Plaintiff called PacificSource in February 2017, the representative guided her through the process of identifying in-network residential mental healthcare facilities and, at that time, there were fourteen such facilities within ten miles of Plaintiff's address. However, Plaintiff presented evidence during her appeals that none of the in-network residential facilities were appropriate for the type of care Plaintiff required, which necessitated Plaintiff seeking care out-of-network at New Haven. In denying Plaintiff's first appeal, Defendants offered that Cedar Hills Hospital was an available in-network option and, when it was brought to Defendants' attention in Plaintiff's second appeal that Cedar Hills Hospital did not treat minors, Defendants offered only the vague statement that appropriate services were available, but Defendants did not identify any appropriate providers. This conclusion is illogical and without support in inferences that may be drawn from the facts on the record. The Court is left with a definite and firm conviction that a mistake has been committed.

On this record, the Court concludes that Defendants abused their discretion in denying Plaintiff's claim. Defendants' motions for judgment are therefore denied and Plaintiff's motion for judgment is granted.

An award of retroactive benefits is appropriate because Defendants' denial of benefits is contrary to the factual record. *Sterio v. HM Life*, 269 Fed. App'x 801 (9th Cir. 2010). Accordingly, Defendants are ordered to provide coverage for Plaintiff's claims consistent with the terms of the Plan.

## CONCLUSION

For the reasons set forth above, Defendant PacificSource Health Plans' Motion for Summary Judgment, ECF No. 38, is DENIED. Defendants Legacy Heath and Legacy Health Plan No. 504 ("Legacy")'s Motion for Summary Judgment, ECF No. 40, is DENIED. Plaintiff Riley Boyle's Motion for Judgment, ECF No. 41, is GRANTED. Plaintiff's Motion to Strike the Declaration of Tammi Mizer, ECF No. 48, is GRANTED. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this ____28th____ day of September 2023.

 /s/Ann Aiken_____
ANN AIKEN
United States District Judge